Good morning. Michael Reynolds of Snell and Wilmer on behalf of Appellant Safari Club International, United States Sportsman's Foundation, and Congressional Sportsman's Foundation. Since the court has already, and the previous parties have already addressed the questions of the standard of review and also, I think, address the central Hudson test, I'll try not to go over those matters unless the court has specific questions of us regarding those. I would like to take a shot from beyond the three-point line here and discuss why I believe that the statute in question does more than just regulate commercial speech. Commercial speech is defined in Hunt v. City of Los Angeles as speech that does no more than propose a commercial transaction. This circuit has cautioned that commercial speech doctrine is not to be defined too broadly lest speech deserving of greater constitutional protection be inadvertently suppressed. In this case, the statute in question not only does it engage in viewpoint discrimination for the reasons that have already been mentioned by our predecessors. You don't have a lot of time, so maybe you could just let us know why you're not kind of boxed in by Sorrell and then our circuit's interpretation and retail digital network. Well, because the statute in question here defines marketing and advertising more broadly than just proposing a commercial transaction. For instance, an advertisement that encourages the lawful possession and use of a firearm is forbidden by this statute, so long as it is reasonably likely to appeal to a minor. That's more than just proposing. I mean, since this first part of Central Hudson is whether that's true and lawful, I mean, it's kind of on Central Hudson, sort of, the assumption in Central Hudson is that there's going to be some things that are lawful, things that are lawful that will be banned, right? So, or speech about things that are lawful will be banned, or speech that's lawful. So, why does that not, I mean, the mere fact that this is overbroad, how does that get you out of Sorrell and retail? Because when you cross the line into viewpoint discrimination and you are merely encouraging, and at this point we're not even talking about transaction at all. We're just encouraging the possession or use of something that is protected by the Second Amendment. That is protected conduct. And at that point, they've crossed the line. It's no longer commercial necessarily at all. For instance, a junior-sized T-shirt that had an outline of a Henry rifle, a .22 caliber that, an advertisement for that would be banned under this statute, whereas the same shirt with the same logo or the same outline of a firearm on it, a Henry rifle that said something like, you know, these are dangerous and they're for killing people and that's the only use they have, that would not be banned under the statute. And then you've kind of got this middle category where if it said this is useful for hunting, well, maybe it is, maybe it isn't. But you really got to listen to what my colleague, his question was very good because he said, given Sorrell and retail digital network, how can you go with what argument you're making? Because as you know, regional digital networks suggested that Sorrell did not require strict scrutiny or content-based restrictions on commercial speech. That's our case. And now you're trying to suggest that somehow under Sorrell I could make viewpoint different than that content-based. Well, that's why his question was good. He said to distinguish it, isn't it just as he, well, given what we have to do under commercial speech, isn't that the better way to deal with this situation? Well, it's... Otherwise you've got to say, well, regional detail didn't talk about a review of viewpoint-based only on content-based and so therefore I can still get strict scrutiny. That's what you got to say in order to get there because retail is pretty specific. Well, I certainly wouldn't want to dissuade the court from striking this statute down under Central Hudson Review. You're not, but you've got to answer his question. It's pretty... I mean, otherwise we can get to strict scrutiny under your idea as it relates to viewpoint-based restriction, but I've got retail digital sitting right in front of me that's saying content-based restriction is not enough to get to strict scrutiny as long as it's about commercial speech. But viewpoint-based discrimination is a special subset of content-based discrimination. As I think about your argument, it almost... Your argument seems like it would... Your viewpoint argument would be that it's made it worse that they actually... They amended it, right, and tried to say, well, if you're advocating or if you're talking about associations or if you're talking about these certain topics, viewpoints, you could say. And so in a sense, the fact that they actually tried to make it... Exempt those but would still include the one type of shirt almost makes it worse under the argument you're saying. In a sense, it does, Your Honor, and the reason for that is it exposes the viewpoint discriminatory motives of the legislature as if the legislative history didn't already do that. Wouldn't that be kind of true in all instances? Say smoking, you've got some smoking ban or something, but then you say, well, it's okay to have a shirt that is attractive to minors that says smoking is bad and has the same picture. I mean, you could use the same argument and you don't think that's okay to ban smoking advertisement to minors but allow a shirt that has the same picture that says don't smoke these? Well, yeah, I think the tobacco advertising cases are different fundamentally because for several reasons. I think, first of all, there isn't a fundamental constitutional right to smoke or to use tobacco products or to sell tobacco products, whereas that is certainly not the case with firearms and ammunition. I think also there aren't any health benefits. I mean, every use of a tobacco or alcohol product has a deleterious effect, whereas there are many uses of firearms and firearm-related products that aren't accompanied by deleterious effects. I think you're pointing out how murky and what a mess our commercial speech doctrine is. But, you know, we have retail digital network as an en banc case, and they said commercial speech, viewpoint content, discrimination claims, you know, no go. So, I mean, don't we just have to follow that? Well, there's another angle here, though, Your Honor, and I think maybe Dex Media points the direction here because the restriction on the placement of advertisements in publications that are themselves protected First Amendment publications. It's similar, in a sense, to the Yellow Pages cases. You know, speech that may be characterized as commercial in the abstract, it does not retain the commercial character when it's inextricably intertwined. Advertisements promoting firearm ownership and usage are advocating for the exercise of Second Amendment rights, and those advertising revenues make it possible for the publications to advocate Second Amendment rights to a broader audience. Those advertisements are inextricably intertwined in even a greater sense than the Yellow Pages advertisements were intertwined with the Yellow Pages book that included the White Pages along with them. Do you want to reserve some time? Yes, I would reserve a few moments. Thank you. Thank you. Thank you. So I would like to start by talking about the Retail Digital Network case. I think Your Honors are correct, that is important in this case because it does affirm that under is still evaluated under Central Hudson. I'm not sure that it went as far as viewpoint. It seemed to me that it concentrated on content-based restriction, not viewpoint. It did concentrate on that. And so therefore, it would seem to me that I have wiggle room. That's why I ask him, how am I going to get there? Well, I think the logic of why the content-based discrimination still goes under Central Hudson also applies to viewpoint discrimination in the sense that with respect to both types of discrimination, the court in Sorrell evaluated the statute, found there to be that type of discrimination, and then discussed whether or not Central Hudson would apply based on not what type of discrimination there was, but whether it was fully commercial speech, and then proceeded to go through Central Hudson, which if it wouldn't have applied, they wouldn't have bothered to do. So the logic, I think, is still there. Well, one of the amici really addressed this issue pretty well, I felt, and they felt like we could get there, but I wanted to make sure he felt where he was. Go ahead. So the next issue I want to address is the idea that the statute would cover a T-shirt that said something about firearm use. And that is simply not the case. Under the plain words of the statute in Section A-1, it restricts only advertising or marketing for a firearm-related product, which is defined in the statute. So it does not cover things like T-shirts. Further, in the definition of marketing or advertising, any kind of encouragement is still about a product in exchange for monetary compensation. So it's not at all inclusive of mere statements about firearms. It is about firearm products only. Going back to Central Hudson analysis, is there anything in the record that shows that restricting truthful, lawful advertisement about guns that may be reasonably attractive to minors would reduce unlawful possession of guns by minors or gun violence? Well, the standard for that is not that there has to be a surplus of empirical evidence. The standard can be historical background and common sense. And I think that if you look at the case law, that is what a lot of the courts have relied on in order to find that that prong was met. So despite the fact – But in 44 Liquor Martin, the Supreme Court basically said, well, just kind of hunches, general sense of common sense isn't enough. In that case, it was restricting the price of alcohol, advertising over the price of alcohol. It says, well, theoretically, yes, if you limit the advertisement of sale prices of alcohol, it may theoretically reduce the consumption of alcohol. But they said, well, that's not enough. You need something that will show that will quote-unquote significantly dampen alcohol demand. And here, I mean, I don't see really any evidence that restricting ads in Junior Sportsman magazine or what it may be will reduce unlawful possession of guns or gun violence. Your Honor, to quote what I was trying to paraphrase before, the Supreme Court in Florida Bar did say that the restrictions can be based solely on history, consensus, and simple common sense, which is what I think the courts did in Edge Broadcasting and in Swecker. But I think this is what – this kind of goes back to what I was asking. I guess it's in the other case now. But the common sense aspect, I'm really struggling with the idea that there's, like, literally a single person out there that's reading an advertisement in junior shooting sports and then go buying a gun illegally or reading an advertisement. There is misuse of guns by minors. There's illegal – but if we were going to look at common sense, what is the common sense link here that this type of advertising has been banned? Again, I think there's common sense across – because the studies have shown this across all types of different types of products. And it doesn't mean – first of all, I think it would be very difficult to isolate a specific circumstance to show evidence that a particular ad or that a youth even processed the fact that, oh, it was advertising that caused me to do this. But I think if it contributes to illegal use and possession, I think that's sufficient because I think that directly advances it. Even if it's not a one-to-one, this one ad caused this to happen. To be fair, that's a little mischaracterization of my – I mean, hopefully you can tell. My position is not that it needs to be one-to-one or anything. I'm like – it just does not pass the straight-face test, so to speak, that, like, there's much of any of a relationship. Could California pass a law that says you can't have any advertisement that shows guns or violence that may be reasonably attractive to minors in advertisements? I'm sorry. Would you mind restating that? Could California pass a law that says you can't have any advertisements that shows guns or violence or glorifies violence and which may be reasonably attractive to minors? So any ads for any type of product? Let's say movies and video games. So it says, look, when you see these advertisements showing a Quentin Tarantino movie, you have a handsome actor shooting people, looks cool. We think that advocates gun violence. Could California ban such ads? I don't – I think the first step in that analysis would be whether or not it's purely commercial speech. And even if you're talking about ads for a movie, I'm not sure that would be purely – They're trying to sell the movie. They're not preventing making of the movie. But they're saying when you're putting on TV where kids will watch and it's clearly directed at kids, could California ban such ads? So I'd have to, again, go through the steps of the process. Again, I'm not sure that would be purely commercial speech, even if it's an ad for the movie. But saying it was, then you'd have to decide if there's a substantial government interest. I think there would be. You'd have to go to whether a directly advance and then whether or not there is a reasonable fit. I think what's important – part of the importance here is, again, even though this is a legal determination, the case law does say that legislatures are allowed to make some judgments, and there is some level of deference to legislatures' judgments on some of these issues. And so I think that has to be kept in mind here as well. Again, we're not talking about a situation where there has to be plentiful evidence entered into the record before this determination is made. You did say you're not sure if it would be purely commercial speech. I think what's driving you there is that it's an advertisement for a First Amendment activity. So why would that not – I can't remember if it's just the appellants in this case or the last case. But they basically said this is an advertisement for Second Amendment activity. So why would not – I think it sounds like you're almost getting like a hybrid. Why would that not be equally true in this case? Your Honor, I don't think it is – I don't think advertisements for firearms are not advertisements for – they're not – it's a little hard to explain, but they're not statements about the Second Amendment. The people who want to sell firearms or purchase firearms have various views about the Second Amendment. No, but if you have a second – if minors have a Second Amendment right to have a firearm lawfully, right, if the Second Amendment protects minors' ability to use a firearm lawfully, then you're banning advertisement for them to do that. Is banning something that relates to a fundamental right, the same way that earlier you were saying if you were to ban the Quentin Tarantino movie, it might be – your instincts, I think, were that that might be problematic if you're banning an advertisement for the movie because the movie itself is a First Amendment-protected activity. Well, so I think the Bolger case is instructive here. And in that case, the court applied central Hudson scrutiny, despite the fact that the advertisement in question had to do with contraceptives, which the court recognized were a constitutionally-protected activity. And also, just while I have a moment to say it, I would like to state that our position is not necessarily that minors have the constitutional right to use firearms in the circumstances in which California legally allows them to. We don't concede that point necessarily. Just as part of the analysis, I'm not taking a position on that today. I just wanted to make sure that's clear on the record. I think that concludes my comments, then. Thank you. Great. Thank you. I have to talk fast. I've got 86 seconds. So I'd like to start by saying Sorrell and Retail Digital addressed solely commercial speech. Those cases didn't deal with mixed-content viewpoint and mixed-content speech. Here, we're dealing with mixed-content speech. We're talking about—and that's why I think DexMedia is the vehicle to get to non-central Hudson review. Again, the statute fails under central Hudson. But it's viewpoint discrimination, and that is presumptively unconstitutional, regardless of whether it's commercial speech. The new exception did exacerbate the viewpoint discrimination because it singled out state-approved views for exemption from application of the statute. That's what the First Amendment doesn't allow. And something that is important to recognize about the content of advertising that is at issue here, firearms are inherently symbolic of the Second Amendment and Second Amendment freedoms. The law here singles out only speakers and messages that promote Second Amendment-protected products. The Second Amendment, unlike other constitutional freedoms, actually guarantees the right of access to certain products, that being firearms and ammunition. Now, of course, this statute goes far, far further by restricting firearm accessories that are defined so broadly they can include things like optical gear and ear protection and things like that. But the important point is that a reasonable onlooker who sees the promotion of a firearm would understand the inherent pro-Second Amendment message that the firearm or the advertisement for that symbolizes. And that's the fundamental freedom that's at stake here. That's the content and the viewpoint that is being discriminated against in how we get to strict scrutiny. Great. Thank you. Thank you, Your Honors. Thank you both for the helpful argument. The case has been submitted, and you're adjourned for the day. Thank you. All rise. This court, for this session, stands adjourned.
judges: SMITH, LEE, VANDYKE